Filed 11/20/20  Dennis v. Ho CA2/4

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| MARLENE DENNIS, | B304459 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BP145487) |
| v. | |
| JANEY HO, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court for Los Angeles County, Daniel Juarez, Judge.  Affirmed.

SW Smyth and Andrew E. Smyth for Defendant and Appellant.

Lurie, Zepeda, Schmalz, Hogan & Martin, Maximillian D. Casillas and Troy L. Martin for Plaintiff and Respondent.

This is the third appeal in this case involving Janey Ho (Janey[1]) and the conservator of her mother's estate, Marlene Dennis (the

---

[1]    Because there are multiple members of the Ho family who are involved in this case, we will refer to the family members by their first names to avoid confusion.

conservator).  In the first appeal (*Dennis v. Ho* (Feb. 28, 2018, B277268) [nonpub. opn.] (*Dennis I*)), we addressed the probate court's order granting the predecessor conservator's Probate Code[2] section 850 petition.  The probate court found that Janey, in bad faith, wrongfully took, concealed, and disposed of funds belonging to her mother, and ordered Janey to return those funds and to transfer to the conservator property she purchased with those funds.  In *Dennis I*, we agreed that Janey was not entitled to keep the funds, but we held that the amount she was ordered to return was not supported by the evidence.  Therefore, we reversed in part and remanded the case with directions to the probate court to determine the correct amount.

In the second appeal (*Dennis v. Ho* (Sept. 6, 2018, B282799) [nonpub. opn.] (*Dennis II*).), we addressed the probate court's order granting the conservator's petition for a substituted judgment to create an estate plan.  But because the conservator's petition was based largely on the value of the conservatee's estate before our decision in the *Dennis I*, we reversed the probate court's order and remanded for reconsideration after the probate court complied with our directions on remand in *Dennis I*.

Following remand in both appeals, the probate court held proceedings to determine the amount Janey was required to return to the conservator.  She did not appeal from the order setting forth that determination.  The court then held further proceedings on the

---

[2]     Further undesignated statutory references are to the Probate Code.

remanded petition for substituted judgment and on an issue that had been deferred in the original proceeding, i.e., Janey's liability for so-called section 859 damages based upon the finding that Janey had acted in bad faith. The probate court granted the petition and found Janey liable under section 859 for twice the amount she was found to have taken from her mother. Janey now appeals from this order.

In this appeal, Janey attempts to challenge the proceedings on remand from *Dennis I*, despite having failed to timely appeal from the order from those proceedings. She also attempts to challenge the bad faith finding made in the order that was the subject of *Dennis I*, but that finding (which Janey did not challenge in *Dennis I*) was the basis for a subsequent award of attorney fees to the conservator, which award she did not timely appeal. Therefore, she is precluded from challenging the bad faith finding in this appeal. The remaining issues Janey raises are based upon misunderstandings of our prior opinions and the probate court's order. In short, she fails to raise any meritorious argument for reversal. Accordingly, we affirm the probate court's order.


## BACKGROUND[3]

A.    *Facts and Proceedings Leading to Dennis I and Dennis II*

In January 2010, Janey's mother, Tanya Ho, signed a durable power of attorney appointing her three children—Janey, Lisa Tang Ho,

---

[3]    We take some of the background facts from our opinions in *Dennis I* and *Dennis II*.

3

and George Tang Ho—to serve as her attorneys-in-fact. Under the durable power of attorney, all three appointees were required to act unanimously. (*Dennis I*, *supra*, B277268, at p. 2.) Some months later, Tanya went into a vegetative state after undergoing brain surgery for hydrocephalus. In November 2010, certain accounts in Tanya's name were liquidated and the funds transferred into accounts jointly owned by Janey and Tanya. Those funds then were used, along with some funds contributed by Janey, to purchase a $650,000 property in Playa Vista, California (the Playa Vista property). Title to the Playa Vista property was entered in Janey's name. (*Id.* at pp. 2-3.)

In 2014, Tanya was placed under conservatorship, with Jeffrey Siegel appointed as conservator. (*Dennis I*, *supra*, B277268, at p. 4.) In October 2015, Janey obtained a $650,000 loan secured by a deed of trust against the Playa Vista property, and used the proceeds to buy a property in Hawaii, renovate some other properties, pay bills, and pay for Tanya's care. (*Ibid.*) Siegel, as conservator, filed a petition under section 850 (the section 850 petition) to determine title to the Playa Vista property, to declare the property held by the conservator, to order Janey to return all funds she received from the loan secured by the deed of trust on the property, to order Janey to provide an accounting for all monies and properties taken from Tanya, and for "double damage pursuant to Probate Code §859" and attorney fees and costs.

The probate court granted the section 850 petition on June 27, 2016. It found that Janey violated section 4232's prohibition against self-dealing by an attorney-in-fact, section 4233's proscription against commingling of funds, and section 5301's requirement that shares in a

4

joint tenancy account be apportioned according to the amounts contributed. The court ordered: (1) that Janey transfer the Playa Vista property to the conservator; (2) that Janey return to the conservatorship estate the funds she received from the loan secured by the deed of trust on the Playa Vista property; (3) that Janey provide an account of the funds and property taken from Tanya; (4) that the funds from the loan secured by the deed of trust be placed in a blocked account; (5) that any additional funds from the loans secured by deeds of trust against the property[4] be accounted for, and that the Hawaii property purchased with some of those funds be transferred to Tanya; (6) that Janey be restrained from further encumbering the Playa Vista property; (7) that damages against Janey for bad faith be deferred; and (8) that Janey reimburse conservator Siegel for his reasonable attorney fees and costs under section 859 "based upon the finding that [Janey], in bad faith, wrongfully took[,] concealed, and disposed of property belonging to Conservatee Tanya Ho."

On August 25, 2016, Janey filed a notice of appeal from probate court's order. A month later, conservator Siegel filed a motion for attorney fees under section 859 based upon the probate court's finding that Janey, in bad faith, wrongfully took, concealed, and disposed of property belonging to Tanya. Janey did not file an opposition and did not appear at the hearing on the motion. The court granted the motion

---

[4]    There was evidence that Janey obtained an additional loan secured by a deed of trust against the Playa Vista property, but that loan never was funded and the lender agreed to remove the deed of trust. (*Dennis I, supra,* B277268, at p. 4.)

5

and ordered Janey to pay more than $94,000 to the conservator. A notice of entry of the order was served on Janey on November 3, 2016. Janey did not file a notice of appeal from this order.

In the meantime, in October 2016, the conservator filed a petition for a substituted judgment to create an estate plan and to fund a living trust for Tanya, with a neutral fiduciary as trustee (the substituted judgment petition). (*Dennis II*, *supra*, B282799, at p. 3.) The probate court granted the petition, and Janey appealed. (*Id.* at p. 4.)

B.     *Our Opinions in Dennis I and Dennis II*

On February 28, 2018, we issued our opinion in *Dennis I*, *supra*, B277268. In that opinion, we listed the arguments Janey raised: (1) that the probate court erred by failing to consider that Tanya's durable power of attorney allowed gifts to be made if all three attorneys-in-fact agreed, and that the funds used to purchase the Playa Vista property was a gift to Janey; and (2) that the probate court erred in relying on the provision in the current version of section 5301 that shares in a joint tenancy account be apportioned according to the amounts contributed, because under the version of section 5301 in effect at the time she withdrew the funds to purchase the Playa Vista property, the funds became a gift to her. (*Dennis I*, *supra*, B277268, at p. 6.)

Although we rejected those arguments[5] (*Dennis I, supra*, B277268, at pp. 10-11, 13), we found that the evidence did not support some parts of the probate court's order. Specifically, we concluded that, although the record supported the order to repay at least some of the funds Janey received from the loan secured by the deed of trust on the Playa Vista property, the record did not support (1) the order to transfer title of the property to the conservator, (2) the order that Janey repay the full amount she obtained (we held she must be credited for the amount she contributed to purchase the property), or (3) the order that Janey return both the amount she obtained from the loan and the Hawaii property she bought with some of the loan proceeds. (*Id.* at pp. 13-15.) Therefore, we reversed the probate court's order "to the extent that it orders [Janey] to transfer the Playa Vista property to the conservator, to repay the full $650,000 loan, and to return the property she purchased with the loan." (*Id.* at p. 16.) We remanded the matter to the probate court "to determine the amount [Janey] actually contributed out of her own funds to the purchase of the Playa Vista property and then to deduct that amount from whatever total the court orders her to repay. After determining how much [Janey] contributed from her own funds to purchase Playa Vista, the court further shall determine if appellant should transfer [to the conservator] the [Hawaii property] she purchased with the proceeds of the $650,000 loan . . . and

---

[5] Although we found that the amendment to section 5301 did not apply retroactively, we found that funds she withdrew from the joint account did not pass to Janey by way of gift because she was bound by the terms of the durable power of attorney. (*Dennis I, supra*, B277268, at pp. 10-11.)

repay the remaining difference, or if she should keep the [Hawaii property] and repay the entire $650,000 principal plus interest—again, with credit for her contribution to Playa Vista." (*Ibid.*)

Several months later, on September 6, 2018, we issued our opinion in Janey's appeal from the probate court's order granting the substituted judgment petition. We concluded that, given our partial reversal of the probate court's order granting the conservator's section 850 petition, which partial reversal significantly changed the asserted value of the conservatee's estate, there was insufficient evidence to support the substituted judgment petition. (*Dennis II*, *supra*, B282799, at p. 11.) Therefore, we reversed the order and remanded the matter for reconsideration based upon the probate court's determination on the remand from the earlier appeal in *Dennis I*.

C.     *Proceedings on Remand*[6]

After we issued our opinion in *Dennis II*, the probate court held a two-day trial to determine the amount Janey contributed to the purchase of the Playa Vista property, as we directed in our disposition in *Dennis I*. The conservator presented evidence, including the uncontested testimony of a forensic accountant who traced the funds Janey used to purchase the Playa Vista property, establishing that Janey contributed $149,001.21 of her own funds towards the purchase

---

[6]     We note that the proceedings on remand were held before a different judge than the judge who presided over the original petitions. Also, in light of the few cognizable arguments Janey raises in this appeal, we need not set out the facts regarding the proceedings in much detail.

8

price of $651,351.41. Therefore, the probate court concluded that Janey must repay $502,350.20 to the conservatee's estate. The court issued its order setting out its reasoning and conclusions on July 17, 2019. Janey was served with notice of entry of the order on October 10, 2019. Janey did not file a notice of appeal from the July 17, 2019 order.

After the probate court issued its July 17, 2019 order, the parties submitted briefs setting forth their positions on the substituted judgment petition and the issue of section 859 "damages," which issue the court had deferred when it issued its original order on the section 850 petition that was the subject of *Dennis I*. In her pre-hearing brief, Janey focused primarily upon her argument that she did not act in bad faith and had done nothing wrong, and that this court, in *Dennis I*, had found that her actions had complied with the durable power of attorney and had benefitted Tanya; therefore, she contended that the conservatorship should be terminated.

The probate court held a hearing on the matter on October 1, 2019, and ordered closing argument by written brief.[7] The conservator presented evidence showing the probate, professional, and attorney fees the conservatee's estate would save if the substituted judgment petition

[7]    There is no reporter's transcript of the October 1, 2019 hearing, so we do not know what (if any) evidence was presented at the hearing. In addition, although Janey included both parties' pre-hearing briefs in her appellant's appendix, she did not include the closing briefs, nor did she include the probate court's order from which she appeals. The conservator included the conservator's closing and reply briefs (but not Janey's closing brief) and the order that is the subject of this appeal. Therefore, our description of the arguments made and evidence presented is based upon the conservator's briefs and the probate court's order.

were granted, based upon the valuation of the assets belonging to or owned by the estate, which assets would be subject to probate upon Tanya's death if the petition were not granted. The court concluded it was in the best interest of the conservatee's estate to grant the petition because it would save probate fees, maintain the dispositive provisions of Tanya's will, and protect the estate and Tanya's wishes by having a neutral fiduciary as trustee. The court found it was reasonable to conclude that Janey was unfit to act as a fiduciary for Tanya's estate because she "has committed bad acts against [the] estate."

Addressing the imposition of liability under section 859, the probate court noted that the original judge found that Janey had in bad faith wrongfully taken, concealed, or disposed of property belonging to Tanya. The court observed that this court did not reverse that finding or otherwise rule on it in *Dennis I*. Therefore, it concluded that Janey was liable under section 859 for twice the value of the property recovered. Accordingly, the probate court ordered Janey to pay to the conservatorship estate a total of $1,004,700.40, which is "inclusive of the reimbursement ordered by the instant trial court on July 17, 2019."

The probate court issued its order on the substituted judgment petition and liability under section 859 on December 20, 2019. Janey timely filed a notice of appeal from that order.

## DISCUSSION

It is difficult to concisely state the issues Janey purports to raise on appeal. In her appellant's opening brief, she includes a heading for "ISSUES ON APPEAL" in which she lists eight issues. Her argument

10

section, however, does not track those precise issues.  Combining the eight issues she lists with the (by our count) nine issues she actually raises in the body of her brief, we can group all into three categories: (1) challenges to the probate court's determination of the amount Janey contributed to the purchase of the Playa Vista property; (2) challenges to the imposition of liability under section 859; and (3) challenges to the granting of the substituted judgment petition.  We address each category in turn.

A.    *Challenges to the Determination of Janey's Contribution*

Janey raises several arguments in which she contends the probate court erred, either procedurally or factually, in determining the amount she contributed to the purchase of the Playa Vista property.  None of those issues is properly before us because Janey did not timely file a notice of appeal from the July 17, 2019 order in which the probate court made its ruling.  Notice of that order was served by mail on Janey on October 10, 2019.  Janey had 60 days from that date to file a notice of appeal.  (Cal. Rules of Court, rule 8.104(a)(1)(A).)  She did not do so.

It is well established that "if an order is appealable, appeal must be taken or the right to appellate review is forfeited." (*In re Baycol Cases I & II* (2011) 51 Cal.4th 751, 761, fn. 8.)  Code of Civil Procedure section 904.1, subdivision (a)(10) provides that an appeal may be taken from any order made appealable by the Probate Code.  And Probate Code section 1300, subdivision (k) provides that an appeal may be taken from the making of, or refusal to make, an order "[a]djudicating the merits of a claim made under Part 19 (commencing with Section 850) of

Division 2." Because the probate court's July 17, 2019 order was an order adjudicating the merits of the conservator's section 850 petition (albeit, a limited component of the merits, the other components having been affirmed on appeal in *Dennis I*), it was an appealable order. Because Janey did not timely appeal from the order she forfeited any issues arising from that order.

B.    *Challenges to Liability Under Section 859*

Most of the issues Janey raises in her opening brief relate to the probate court's imposition of liability under section 859 for twice the value of the property recovered by the section 850 petition  She is precluded from asserting many of the issues she raises; the remainder have no merit.

Section 859 provides, in relevant part:  "If a court finds that a person has in bad faith wrongfully taken, concealed, or disposed of property belonging to a conservatee, a minor, an elder, a dependent adult, a trust, or the estate of a decedent, . . . the person shall be liable for twice the value of the property recovered by an action under this part.  In addition, except as otherwise required by law, . . . the person may, in the court's discretion, be liable for reasonable attorney's fees and costs.  The remedies provided in this section shall be in addition to any other remedies available in law to a person authorized to bring an action pursuant to this part."[8]

---

[8]    Many courts and practitioners refer to this provision informally as a "double damages" provision.  (See *Estate of Ashlock* (2020) 45 Cal.App.5th

12

As noted, the original probate court deferred determining section 859 "damages," but found that Janey was required to pay the conservator's reasonable attorney fees, based upon its finding that she "in bad faith, wrongfully took[,] concealed, and disposed of property belonging to Conservatee Tanya Ho." After conducting the proceedings on remand as directed in *Dennis I* and *Dennis II*, the current probate court took up the deferred issue of "damages" under section 859. The court stated: "given the original trial court's finding and ruling and noting that the Court of Appeal did not reverse this finding and order or otherwise rule on it[,] [i]t is therefore appropriate to impose those damages now."

Janey contends that the probate court erred because it was not bound by the original finding that she acted in bad faith in ruling on liability under section 859 because (1) the issue of liability under section 859 was not adjudicated in *Dennis I*; (2) *Dennis I* did not require the probate court to adopt the findings and rulings of the original judge; and (3) this court made an implicit finding of no bad faith in *Dennis I*. She also contends there was insufficient evidence to support liability under section 859 because she did nothing wrong. Finally, she contends the probate court improperly calculated the amount for which she is liable. She is mistaken.

First, there is no dispute that we did not directly address the bad faith finding in *Dennis I*. But Janey's assertion that we implicitly found

1066, 1074.) In fact, the liability imposed does not represent damages, but rather a penalty for wrongful conduct.

13

she did not act in bad faith is patently false. While we did not directly address the bad faith finding—because Janey did not directly challenge that finding in her appeal—we did affirm the probate court's finding that Janey violated the terms of the durable power of attorney, as well as section 4232's prohibition against self-dealing by an attorney-in-fact and section 4233's proscription against commingling of funds. The fact that we did not also specifically affirm the finding of bad faith does not in any way suggest that we intended to reverse that finding.

Second, we need not address whether the probate court was required under *Dennis I* to follow the original probate court's finding of bad faith, because that finding of bad faith is now final as a result of Janey's failure to appeal from the subsequent order awarding $94,000 in attorney fees to the conservator. As noted, after the original probate court issued its order granting the section 850 petition in which it found that the conservator was entitled to attorney fees under section 859 based upon its finding of bad faith, the conservator brought a motion asking for an award of fees based upon those findings. Janey did not oppose the motion and did not appeal from the order granting the conservator's motion. Therefore, that fee award *and the findings upon which it was based* became final on January 2, 2017—i.e., 60 days after Janey was served with the notice of entry of the order (Cal. Rules of Court, rule 8.104(a)(1)(A))—and could not be relitigated. (See *Key v. Tyler* (2019) 34 Cal.App.5th 505, 532, 534 [collateral estoppel, or issue preclusion, applies to probate court's prior finding where an identical issue was actually litigated and necessarily decided in a prior proceeding against the same party].) In short, the probate court

14

properly found it was bound by the original court's bad faith finding and rejected Janey's argument that she did nothing wrong and did not act in bad faith.

Finally, Janey's contentions that the probate court improperly calculated the amount for which she is liable under section 859 are simply wrong. In her list of issues on appeal, Janey appears to contend the probate court erred by doubling the reimbursement amount (for the section 859 liability) and adding that to the reimbursement amount. While there is a conflict among the appellate courts regarding whether this is the proper method to determine liability under section 859 (compare *Estate of Ashlock*, *supra*, 45 Cal.App.5th at pp. 1074-1077 [the liability under section 859, i.e., twice the value of the property returned, is in addition to the return of the property taken], with *Conservatorship of Ribal* (2019) 31 Cal.App.5th 519, 525 [total liability with imposition of section 859 liability is double the value of the property returned]), the fact is that the probate court in this case in its final order expressly followed *Ribal* and found that Janey's *total* liability, including the amount she was ordered to return plus section 859 liability, was double the amount she was ordered to return. Similarly, although Janey appears to contend that in determining the amount she must pay to the conservatorship estate the probate court did not apply the credit she was due for the funds she contributed to the purchase of the Playa Vista property until after the court doubled the entire $650,000 she obtained from the loan, the order shows this is not true. The December 20, 2019 order clearly shows that the probate court doubled the amount it had determined in its July 17, 2019 order that Janey was required to return

15

to the conservatorship estate, and the July 17, 2019 order clearly shows that the probate court determined that amount by applying the credit against the total price paid for the Playa Vista property.[9]

C.     *Challenges to Granting of the Substituted Judgment Petition*

Relying entirely upon her assertion that she did engage in any bad faith wrongdoing—and that we so found in *Dennis I*—Janey argues there is no basis to replace her as executor of Tanya's will and no basis for the probate court to have found that the conservator, in seeking a substituted judgment, is acting in Tanya's best interest and carrying out her wishes. As discussed in section B., *ante*, the finding that Janey acted in bad faith is final, and Janey is collaterally estopped from challenging it in this appeal. Therefore, her arguments fail.

//

//

## DISPOSITION

The December 20, 2019 order is affirmed. The conservator shall recover her costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


WILLHITE, J.

We concur:

---

[9]     The parties had agreed that, in light of the totality of our ruling in *Dennis I*, the credit should be applied against the price paid to acquire the Playa Vista property.

16

MANELLA, P. J.


CURREY, J.